Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES DYKE,<br><br>     Plaintiff,<br><br>  vs.<br><br>THE NATIONAL SECURITY GROUP, INC., WINFIELD BAIRD, FRED CLARK, JR., WILLIAM L. BRUNSON, JR., PAUL C. WESCH, JACK E. BRUNSON, DONALD S. PITTMAN, MICKEY MURDOC, WALTER P. WILKERSON, FLEMING BROOKS, FRANK B. O'NEIL, JAMES B. SAXON, CAROLYN E. BRUNSON, BRIAN R. MCLEOD, and L. BRUNSON WHITE,<br><br>     Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, James Dyke ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against The National Security Group, Inc. ("NSG" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of

Defendants' efforts to sell the Company to VR Insurance Holdings, Inc., through merger vehicle VR Insurance Merger Sub, Inc. ("Merger Sub" and collectively with Parent, "VR") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a January 26, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, VR will acquire all the outstanding shares of NSG common stock for $16.35 per share in cash. As a result, NSG will become an indirect wholly-owned subsidiary of VR.

3.      Thereafter, on March 31, 2022, NSG filed a Preliminary Proxy Statement on Form PRE 14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, as the Board collectively owns more than 50% of the outstanding stock of the Company, and has also neglected to include a "majority-of-the-minority" voting provision in the Proposed Transaction, the consummation of the Proposed Transaction is a certainty, rendering the vote of Plaintiff and all other public NSG stockholders meaningless.

5.      Moreover, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement on March 31, 2022 with the SEC in an effort to Plaintiff, to

vote in favor of the Proposed Transaction. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction or to seek appraisal for his shares, and is thus in violation of the Exchange Act. As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for NSG, provided by NSG management to the Board and the Board's financial advisor Piper Sandler & Co. ("Piper Sandler") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Piper Sandler, if any, and provide to the Company and the Board.

7.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

8.      Plaintiff is a citizen of Florida and, at all times relevant hereto, has been a NSG stockholder.

9.      Defendant NSG is an insurance holding company, provides insurance products and services in the United States. NSG is incorporated in Delaware and has its principal place of business at 661 East Davis Street, Elba, AL 36323. Shares of NSG common stock are traded on the Nasdaq Stock Exchange under the symbol "NSEC".

10.     Defendant Winfield Baird ("Baird") has been a Director of the Company at all relevant times. In addition, Baird serves as the Chairman of the Board.

11.     Defendant Fred Clark, Jr. ("Clark") has been a director of the Company at all relevant times. In addition, Clark serves as the company's President and Chief Executive Officer ("CEO").

12.     Defendant William L. Brunson, Jr. ("Brunson") has been a director of the Company at all relevant times.

13.     Defendant Paul C. Wesch ("Wesch") has been a director of the Company at all relevant times.

14.     Defendant Jack E. Brunson ("Brunson") has been a director of the Company at all relevant times.

15.     Defendant Donald S. Pittman ("Pittman") has been a director of the Company at all relevant times.

16.     Defendant Mickey Murdock ("Murdock") has been a director of the Company at all relevant times.

17.     Defendant Walter P. Wilkerson ("Wilkerson") has been a director of the Company at all relevant times.

18.     Defendant Fleming Brooks ("Brooks") has been a director of the Company at all relevant times.

19.     Defendant Frank B. O'Neil ("O'Neil") has been a director of the Company at all relevant times.

20.     Defendant James B. Saxon ("Saxon") has been a director of the Company at all relevant times.

21.     Defendant Carolyn E. Brunson ("Brunson") has been a director of the Company at all relevant times.

22.     Defendant Brian R. McLeod ("McLeod") has been a director of the Company at all relevant times.

23.     Defendant L. Brunson White ("White") has been a director of the Company at all relevant times.

24.     Defendants identified in ¶¶ 9 - 22 are collectively referred to as the "Individual Defendants."

25.     Non-Party VR is a newly formed Delaware Corporation created to undergo the transaction.

26.     Non-Party Merger Sub is a wholly owned subsidiary of VR created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

27.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

28.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

29.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the New York Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

30.     The National Security Group, Inc., an insurance holding company, provides insurance products and services in the United States. It operates in two segments, Property and Casualty (P&C) Insurance, and Life Insurance. The P&C Insurance segment primarily underwrites home insurance coverage with primary lines of business consisting of dwelling fire and extended coverage, mobile homeowners, and other liability insurance in Alabama, Arkansas, Florida,

Georgia, Kentucky, Mississippi, Oklahoma, South Carolina, Tennessee, and West Virginia, as well as operates on a surplus lines basis in the state of Louisiana. The Life Insurance segment offers ordinary life, accident and health, supplemental hospital, and cancer insurance products in the states of Alabama, Florida, Georgia, Mississippi, South Carolina, Tennessee, and Texas. It distributes its products through independent agents and brokers, and home service agents. The National Security Group, Inc. was founded in 1947 and is based in Elba, Alabama.

31.     The Company's most recent financial performance press release, revealed significantly lower than expected expenses, a continuation of the issuance of a dividend, and improvements in investment income.

32.     The prospective financial success and is not merely speculative, but rather, is indicative of a trend of continued future potential success by NSG.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

33.     Despite this upward trajectory, the Individual Defendants have caused NSG to enter into the Proposed Transaction without providing requisite information to NSG stockholders such as Plaintiff.

***The Flawed Sales Process***

34.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

35.     First and foremost, the Board collectively owns approximately 53.71% of the outstanding stock of the Company.  Furthermore, the Board has also neglected to include a "majority-of-the-minority" voting provision in the Proposed Transaction.  Such actions render the consummation of the Proposed Transaction a certainty.

36.     Additionally, the Proposed Transaction also contains a provision that renders the

merger consideration vulnerable to a downward adjustment as much as 10% depending on the amount of the Company's combined statutory capital and surplus of the Company's insurance subsidiaries at the time of the consummation of the Proposed Transaction. Despite the existence of such a serious variable in the calculation of the final consideration given to Company stockholders, the Preliminary Proxy Statement fails to contain any information whatsoever regarding the discussions of the Board during the sales process relating to the negotiation and agreement with this provision.

37.     Compounding these previous issues, the Preliminary Proxy Statement indicates that no committee of independent and disinterested directors was created to run the sales process.

38.     Moreover, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and VR, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

39.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

40.     On January 26, 2022, NSG and VR issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **ELBA, ALABAMA and SAN FRANCISCO, CALIFORNIA** (January 26, 2022)...The National Security Group, Inc. (NASDAQ:NSEC) and VR Insurance Holdings, Inc. ("VR Holdings") today announced that they have entered into a definitive merger agreement, under which VR Holdings has agreed to acquire all of the outstanding common shares of The National Security Group, Inc. ("NSG" or the "Company") for $16.35 per share in cash, representing a 77% premium to the closing share price as of January, 25, 2022. Total transaction value is approximately

$41.4 million, subject to certain provisions[1]. VR Holdings is a newly formed Delaware company founded by Vivek Ranadivé. Mr. Ranadivé has been the Founder and Managing Director of Bow Capital Management LLC and its affiliated funds since 2016 and Chairman, Chief Executive Officer and Governor of the Sacramento Kings since 2013.

"We believe this transaction is in the best interest of NSG's shareholders and policyholders," said William L. Brunson, Jr., Chief Executive Officer of NSG. He said, "By combining our 75-year history of stability, underwriting expertise and commitment to our policyholders with the financial resources of the investor group led by Mr. Ranadivé, we expect to realize greater opportunities for growth and an enhanced ability to serve our policyholders and agent partners." Mr. Brunson also noted that shareholders will benefit from the significant premium to recent share prices.

The Company's Board of Directors has unanimously approved the transaction and recommended that NSG's shareholders vote in favor of the transaction. The agreement requires approval by holders of the majority of NSG's outstanding common shares. The acquisition is expected to close by the end of the second quarter of 2022, subject to customary closing conditions, including receipt of certain required regulatory approvals and approval of NSG's shareholders. There are no financing conditions associated with the definitive merger agreement.

Following closing, it is anticipated that VR Holdings will continue to leverage the existing operations and infrastructure of NSG's wholly owned property and casualty and life insurance subsidiaries. The Company's current Chief Financial Officer, Brian McLeod, will serve as Chief Operating Officer of the Company's insurance subsidiaries and will also serve as VR Holdings' Chief Financial Officer. NSG remains fully committed to its policyholders and its independent agent partners and expects no immediate changes in its day-to-day business operations. Upon completion of the transaction, NSG will become a private company with the flexibility and capital to accelerate its next stage of growth. Mr. McLeod will work closely with the management team including Ross Aron, CEO of VR Holdings, and the investor group to continue the Company's expansion.

### *Potential Conflicts of Interest*

41.    The breakdown of the benefits of the deal indicate that NSG insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of NSG.

42.     First and foremost as stated above, the Proposed Transaction's consummation is a certainty due expressly to the cumulative voting power of the Board, which totals a majority of the outstanding voting stock of the Company.

43.     Additionally, Company insiders, currently own large, illiquid portions of Company stock, which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction.  Notably, while the Preliminary Proxy Statement provides the following information, it fails to provide an accounting of the consideration which such holdings will be exchanged for.

| Names | Number of Shares Owned[1] | Percent of Class |
|---|---|---|
| W.L. Brunson, Jr. | 445,538[2] [3] | 17.59% |
| Andrew J. Abernathey | 380,499[4] | 15.02% |
| Winfield Baird** | 121,221 | 4.79% |
| Jack E. Brunson | 118,826[5] | 4.69% |
| Fred Clark, Jr. | 101,325 | 4.00% |
| Donald S. Pittman | 40,863 | 1.61% |
| Brian R. McLeod | 31,347 | 1.24% |
| James B. Saxon | 24,038 | * |
| Mickey L. Murdock | 23,813 | * |
| Frank B. O'Neil | 21,573 | * |
| Charles B. Arnold | 17,400 | * |
| Walter P. Wilkerson | 11,273 | * |
| L. Brunson White | 10,038 | * |
| Fleming G. Brooks | 8,265 | * |
| Elizabeth B. Crawford | 4,375 | * |
| Directors, Executive Officers and Certain Beneficial Owners (as a group, 15 persons including persons named above) | 1,360,394[6] | 53.71% |

Directors, Executive Officers and Certain Beneficial Owners      87,661    3.56%
(as a group, 15 persons including persons named above)

44.     Additionally, Company insiders, currently own significant holdings of Company equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. Despite this, the Preliminary Proxy Statement fails to provide an accounting of such holdings, or the consideration for which they will be exchanged upon the consummation of the Proposed Transaction.

45.     In addition, certain employment agreements with certain NSG executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

### Golden Parachute Compensation

| Name | Cash ($) | Equity ($) | Pension/ NDQC ($) * | Perquisite/ Benefits ($) | Tax Reimbursement ($) | Other ($) | Total ($) |
|---|---|---|---|---|---|---|---|
| W. L. Brunson, Jr. | $0 | $0 | $1,212,098 | $0 | $0 | $0 | $1,212,098 |
| Jack E. Brunson | $0 | $0 | $ 915,309 | $0 | $0 | $0 | $ 915,309 |
| Brian R. McLeod | $0 | $0 | $ 696,492 | $0 | $0 | $0 | $ 696,492 |

46.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board,

as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

47.     Thus, while the Proposed Transaction is not in the best interests of NSG, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

48.     On March 31, 2022, the NSG Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

49.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

  a.  Specific and adequate reasoning as to why no "majority-of-the-minority" provision was included in the Proposed Transaction;

  b.  Information relating to the Board's discussion and decision making process relating to the Merger Consideration Adjustment that was agreed to as part of the Proposed Transaction;

  c.  Specific reasoning as to why no Committee of the Board composed solely of independent and disinterested directors was created to run the sales process;

d. Whether the confidentiality agreements entered into by the Company with VR differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

e. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including VR, would fall away; and

f. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning NSG's Financial Projections*

50. The Preliminary Proxy Statement fails to provide material information concerning financial projections for NSG provided by NSG management to the Board and Goldman Sachs and relied upon by Piper Sandler in its analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

51. Notably the Preliminary Proxy Statement reveals that as part of its analyses, Piper Sandler noted that it reviewed, "certain internal financial projections for the Company for the years

ending December 31, 2021 through December 31, 2024, as provided by the senior management of the Company".

52.     Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that NSG management provided to the Board and Piper Sandler.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

53.     Notably the Preliminary Proxy Statement fails to provide any information regarding the Company's projection information prepared by Company management, whatsoever, including failing to disclose the projection metrics, sub-metrics and a reconciliation of all non-GAAP to GAAP metrics utilized in the projections and subsequently utilized by Piper Sandler in its analyses.

54.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

55.     Without accurate projection data referenced in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Goldman Sachs' financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal for his shares.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by*
*Piper Sandler*

56.     In the Preliminary Proxy Statement, Piper Sandler describes its fairness opinion
and the various valuation analyses performed to render such opinion.  However, the descriptions
fail to include necessary underlying data, support for conclusions, or the existence of, or basis for,
underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the
valuations or evaluate the fairness opinions.

57.     With respect to the *Stock Trading History* Analysis, the Preliminary Proxy
Statement fails to disclose the following:

    a.  The specific metrics for each of the Companies that make up the analyzed
        "Small Cap Homeowners Insurers" group analyzed.

58.     With respect to the *Comparable Company Analysis*, the Preliminary Proxy
Statement fails to disclose the following:

    a.  The specific metrics for each compared company; and

    b.  The utilized reference range of BVPS, LTM EPS and LTM ROAE multiples,
        utilized as applied to the Company and the specific inputs and assumptions used
        to determine them.

59.     With respect to the *Net Present Value Analysis*, the Preliminary Proxy Statement
fails to disclose the following:

    a.  The specific "certain internal financial projections for the years ending
        December 31, 2021 through December 31, 2024, as provided by the Company's
        senior management" upon which this analysis was based;

b. The terminal value of the Company on a per share basis as of December 31, 2021 calculated;

c. The specific inputs and assumptions used to determine the utilized price to 2024 book value multiples range of 0.60x - 1.00x;

d. The specific inputs and assumptions used to determine the utilized price to 2024 earnings per share multiples range of 8.0x-12.0x;

e. The specific inputs and assumptions used to create the sensitivity of this analysis, including what specific inputs were used to determine the assumption that the Company's book value varied from 20% above projections to 20% below projections;

f. Regarding the sensitivity analysis, the specific inputs and assumptions used to determine the utilized price to 2024 book value multiples range of 0.60x to 1.00x; and

g. The specific inputs and assumptions used to determine the utilized discount rate of 11.7%.

60.    With respect to the *Analysis of Precedent Transactions*, the Preliminary Proxy Statement fails to disclose the following:

a. The specific metrics for each precedent transaction analyzed;

b. The specific date on which each precedent transaction closed;

c. The value of each precedent transaction;

d. The utilized reference range metrics analyzed as applied to the Company and the specific inputs and assumptions used to determine them

61.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction or seek appraisal for his shares.

62.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public NSG stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

63.     Plaintiff repeats all previous allegations as if set forth in full herein.

64.     Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

65.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

66.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or

oral, containing any statement which, at the time and in the light of the

circumstances under which it is made, is false or misleading with respect to any

material fact, or which omits to state any material fact necessary in order to make

the statements therein not false or misleading or necessary to correct any statement

in any earlier communication with respect to the solicitation of a proxy for the same

meeting or subject matter which has become false or misleading.

67.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

68.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

69.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

70.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction or seek appraisal for his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

71.     Plaintiff repeats all previous allegations as if set forth in full herein.

72.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations

and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

73.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

74.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of NSG's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

75.     The Individual Defendants acted as controlling persons of NSG within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause NSG to engage in the wrongful conduct complained of herein. The Individual Defendants controlled NSG and all of its employees. As alleged above, NSG is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.

By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.    Enjoining the Proposed Transaction;

B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Directing the Individual Defendants to comply with the Exchange Act to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: May 10, 2022

**BRODSKY & SMITH**

By: _____

Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*